**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **PRANAV BHATTACHARYA and NAVANEETHA KOOTHAPILLAI,** individually and for all others similarly situated, | ) ) ) ) ) | |
| **Plaintiffs,** | ) ) | |
| vs. | ) ) | **Case No. 16 C 7950** |
| **CAPGEMINI NORTH AMERICA, INC., CAPGEMINI FINANCIAL SERVICES USA, INC., and PETER KORNOWSKE,** | ) ) ) ) | |
| **Defendants.** | ) ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Pranav Bhattacharya and Navaneetha Koothapillai have filed suit on behalf of themselves and others similarly situated against Capgemini Financial Services USA, Inc. (now known as Capgemini America, Inc.), its parent company Capgemini North America, Inc., and Peter Kornowske, a former Capgemini Financial Services USA employee, for alleged violations of the Employee Retirement Income Security Act (ERISA), as amended by the Consolidated Omnibus Budget Reconciliation Act of 1985 (COBRA). Plaintiffs, who were employed by Capgemini Financial Services USA, have asserted four claims arising from defendants' alleged failure to comply with a number of ERISA and COBRA requirements related to group health plans and continuation coverage. First, in count 1, plaintiffs allege that defendants, including Kornowske, who was listed as the group health plan administrator at the time, failed to furnish to them a

copy of the summary plan description (SPD) for the group health insurance plan within 90 days after they became participants, in violation of 29 U.S.C. § 1024(b)(1).  In count 2, they allege that defendants violated 29 U.S.C. § 1166(a)(1) by failing to provide them written notice of their rights under COBRA at the time of commencement of coverage under the plan.  In count 3, they allege that defendants failed to notify the plan administrator of "qualifying events" triggering eligibility for COBRA coverage and that defendants, as plan administrators themselves, failed to notify them of their right to continuation coverage under COBRA based on the occurrence of a qualifying event, as required by 29 U.S.C. §§ 1166(a)(2) and (4).  Lastly, in count 4, plaintiffs allege that defendants violated 29 U.S.C. § 1161(a), which requires group health plan sponsors to provide "each qualified beneficiary who would lose coverage under the plan as a result of a qualifying event" the opportunity to elect COBRA continuation coverage.  Plaintiffs have moved for this case to be certified as a class action under Rule 23 of the Federal Rules of Civil Procedure.  .  For the reasons stated below, the Court grants plaintiffs' motion for class certification, except as to the claims in count 1.

## Background

Capgemini Financial Services USA (Capgemini FS) provides information technology consulting and outsourcing services to clients in the United States. Capgemini FS bills clients for services performed by its technology workforce, which is primarily made up of Indian nationals who have green cards or work visas.  Capgemini FS maintains a Blue Cross Blue Shield (BCBS) group health plan for its employees.  As sponsors and / or administrators of this group health plan, defendants are subject to various notice and continuation coverage requirements under ERISA and COBRA.  All

of plaintiffs' claims arise from the defendants' alleged failure to comply with those requirements.

Bhattacharya and Koothapillai are Indian nationals who have worked both in the United States, for Capgemini FS, and in India, for Capgemini India Private Limited (Capgemini India). Plaintiffs moved back and forth between India and the United States several times over the course of their careers. Defendants characterize these moves as "temporary transfers" from Capgemini India to Capgemini FS; plaintiffs contend that they were effectively terminated and rehired each time they switched between Capgemini India and Capgemini FS.

Both Capgemini FS and Capgemini India are 100% owned by Cap Gemini S.A. The offer letters plaintiffs received when an assignment opened up in the United States described a move between the two companies as "a temporary transfer from Capgemini India Private Limited to Capgemini Financial Services USA." *E.g.*, Defs.' Statement of Uncontested Material Facts (SUMF) Ex. 9 at 2; *id.* Ex. 11 at 2. While plaintiffs were working for Capgemini India, they were paid in rupees. They were eligible to contribute to an Indian retirement plan and were covered, along with their dependents, by Capgemini India's health insurance plan, which does not provide coverage for services performed in the United States. *See id.* Ex. 3 (Kornowske Dep.) at 23:22. While plaintiffs were working for Capgemini FS in the United States, they were included on the U.S. payroll, and their salary was paid in U.S. dollars. They could participate in Capgemini FS's 401(k) plan, and they were eligible to enroll themselves and their dependents in Capgemini FS's group health insurance plan. Generally, when plaintiffs' U.S. projects ended, they would return to work at Capgemini India. At that time,

Capgemini FS would cease paying plaintiffs a U.S. salary, and they would lose their Capgemini FS health coverage and other benefits. Plaintiffs were covered by travel insurance during their trips from the United States to India, and upon their return to Capgemini India, they once again would be paid in rupees and would be covered by the Capgemini India health plan. Plaintiffs did not receive COBRA eligibility notices when they were "transferred" back to Capgemini India from Capgemini FS.

Pranav Bhattacharya is an Indian national who began working for Capgemini India in 2009. He worked for Capgemini FS in the United States from April 2011 to July 2011, May 2012 to September 2013, April 2014 to December 2015, and March 2016 to June 2016. Each time Bhattacharya went to work for Capgemini FS, he brought his family with him to the U.S. The first two times, his family returned to India with him when his U.S. projects concluded. In December 2015, however, Bhattacharya's family—all of whom had permanent resident status in this country—planned to stay in the United States after he stopped working for Capgemini FS, because his children were in school here.

On December 12, 2015, Bhattacharya sent an e-mail to Liz Cauffman, a Capgemini FS human resources principal, to ask whether his family would lose insurance coverage if they stayed in the United States when he returned to Capgemini India. On December 14, Cauffman responded that Bhattacharya's transfer back to India would trigger shipment of a COBRA package. She further stated that he and his family could get reimbursed for medical expenses incurred during the time that he was waiting to receive the COBRA notice, and she referred him to Michelle Odisho, an HR benefits consultant, and Kornowske for further questions. That same day, Bhattacharya e-

mailed Odisho to ask what he needed to do before he left for India to make sure his wife

and children would remain covered under COBRA.  Odisho responded "[p]er our

conversation, once your record terminates, you will receive a cobra [sic] packet within

30 days."  Pls.' Statement of Facts (SOF) Ex. 5, at 2.  But the promised COBRA packet

never arrived.  Bhattacharya made repeated attempts to contact Odisho in February as

the deadline for enrolling in COBRA neared.  In a February 29, 2016 e-mail to Odisho,

on which Cauffman and Kornowske were copied, Bhattacharya wrote, "[i]f you are not

able to help me, could you kindly indicate someone in the organization who can?  I have

been with Capgemini for 6 years now.  The least I can expect is that the company

representatives will understand how desperate a person gets when there is a possibility

of their family losing insurance."  *Id.* Ex. 6, at 2.  Odisho finally responded, "[a]re you

working for Capgemini India?  If so, why would you be enrolling for cobra [sic].  I just

noticed your email . . . stated you were working for Capgmemini [sic] India.  Please

advise."  Defs.' SUMF Ex. 18, at 2.

Bhattacharya began working for Capgemini FS again in March 2016 (and again

enrolled himself and his family in the group health plan), but in May 2016, he was told

he needed to return to Capgemini India.  Bhattacharya requested—and was granted—

additional time to get his affairs in order before leaving the United States.  The parties

dispute what happened next and whether Bhattacharya told Cauffman that he would

leave for India by a particular date.  What is clear is that, by June 9, 2016, Bhattacharya

still had not returned to India.  Cauffman testified that HR made the decision to

terminate him at that time for what the company called gross misconduct—specifically,

for insubordination arising from his apparent refusal to return to Capgemini India and

because they believed he had lied about when he was going to return to India.

Navaneetha Koothapillai is an Indian national who began working for Capgemini India, which was known at the time as Kanbay, in 2003. He worked for Capgemini FS in the United States on two separate occasions between 2006 and 2009, from approximately December 2012 to May 2015, and in June of 2015. When Koothapillai went to work for Capgemini FS in December 2012, his family joined him, and he enrolled everyone—including his two children with special medical needs—in Capgemini FS's group health plan. In May 2015, Koothapillai's Capgemini FS assignment ended. His family's Capgemini FS health insurance was cancelled, and he was expected to return to Capgemini India at that time. Before Koothapillai actually returned to India, however, he obtained a new project assignment in the United States. He initially believed that he would be able to reinstate his family's Capgemini FS health insurance, backdated to the May 2015 date that it was cancelled, but in June 2015, he learned that his insurance would not be backdated if and when he re-enrolled in Capgemini FS's health plan. In a June 12, 2015 e-mail, Koothapillai detailed his frustrations with this process to a number of Capgemini FS HR employees, including Cauffman. He explained that, as a result of these insurance issues, he "had to stop all special services that [his] kids [were] receiving," and he stated that he could not continue working for Capgemini under these circumstances. *Id.* Ex. 28. He resigned effective immediately.

In August 2016, Bhattacharya and Koothapillai filed suit on behalf of themselves and others similarly situated against Capgemini North America and Capgemini FS. They alleged that defendants violated ERISA and COBRA's group health plan notice

and continuation coverage requirements, both when plaintiffs enrolled in Capgemini's group health plan and when they lost coverage under the plan upon being "transferred" back to Capgemini India. In October 2016, defendants moved to dismiss the complaint in its entirety. In a December 2016 order, this Court denied the defendants' motion to dismiss. The Court noted, however, that plaintiffs were not entitled to statutory penalties under 29 U.S.C. § 1132(c)(1) on their claim in count 1 regarding the provision of an SPD. The Court reasoned that penalties are available for section 1024 violations only if the plan administrator failed or refused to comply with a request for a copy of the SPD, and plaintiffs did not allege that they ever made such a request. *See Bhattacharya v. Capgemini N. Am., Inc.*, No. 16 C 7950, 2016 WL 7049082, at *1 (N.D. Ill. Dec. 4, 2016). The Court further noted that defendants' argument that "procedural" violations of ERISA such as those alleged by plaintiffs warranted monetary relief only if the plaintiffs could show bad faith, active concealment, or prejudice did not appear to be accurate. *Id.* at *2; *see Gomez v. St. Vincent Health, Inc.*, 649 F.3d 583, 589-90 (7th Cir. 2011), *as modified* (Sept. 22, 2011) (treating bad faith, active concealment, and prejudice as factors to consider in deciding whether to impose penalties, not as prerequisites for stating a claim in the first instance).

Plaintiffs filed an amended complaint in December 2016. In addition to adding Kornowske as a defendant, plaintiffs dropped their request for statutory damages for the alleged section 1024 violation and added allegations of bad faith and prejudice resulting from defendants' alleged failure to comply with their COBRA obligations. In August, 2017, plaintiffs moved for class certification.

## Discussion

"A district court may certify a case for class-action treatment only if it satisfies the four requirements of Federal Rule of Civil Procedure 23(a)—numerosity, commonality, typicality, and adequacy of representation—and one of the conditions of Rule 23(b)." *McCaster v. Darden Rests., Inc.*, 845 F.3d 794, 800 (7th Cir. 2017) (citation omitted). Here, plaintiffs seek certification under Rule 23(b)(3), which requires a court to find that "the questions of law or fact common to class members predominate over any questions affecting only individual members" and that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P 23(b)(3). The party seeking class certification bears the burden of showing that the requirements of Rule 23 are met. *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 811 (7th Cir. 2012).

In their initial motion for class certification, plaintiffs moved to certify the following class:

> All current and former Indian IT Workers who worked for Defendants, who participated in Capgemini's Group Health Plan together with their spouses and covered dependents at any time from August 8, 2014 to the date of judgment in this action, and who did not receive proper COBRA notice and subsequent coverage in violation of ERISA.

Pls.' Mot. for Class Certification at 5. In response to defendants' objections that the proposed class was overbroad and an impermissible fail-safe class, plaintiffs proposed two subclass definitions in their reply brief:

> All current and former Indian national employees who elected coverage under Defendants' GHP, together with their spouses and other covered dependents, at any time during the relevant statutory period, who were not provided a SPD or initial COBRA notice; and

> All current and former Indian national employees who elected coverage under Defendants' GHP, together with their spouses and other covered dependents, at any time during the relevant statutory period, and who

were not provided notice of COBRA continuation coverage upon the complete loss of coverage.

Pls.' Reply in Supp. of Mot. for Class Certification at 3-4.  Defendants filed a surreply addressing the proposed revised class definitions.

In addition to arguing that the proposed subclasses do not satisfy the Rule 23 requirements for class certification, defendants object to both of the proposed definitions.

As for the first proposed subclass definition, defendants contend that it is not a subclass definition so much as an attempt to expand the original proposed class definition to encompass plaintiffs' first two claims, which were not addressed in detail in their opening brief.  Although the class definition proposed by plaintiffs in the initial motion for class certification did not account for employees and dependents who were not provided an SPD or COBRA notice upon enrollment in the group health plan, defendants have not been prejudiced by this proposed addition, because they had an opportunity to address it in their surreply.  The Court will not decline to certify the first proposed subclass on this basis.

Next, defendants argue that the second proposed subclass definition remains overly broad because it is not limited to employees who have transferred between Capgemini India and Capgemini FS, but also includes all employees who were "terminated from the organization as a whole"—meaning that they no longer worked for either Capgemini India or Capgemini FS—even though plaintiffs have expressly stated that they are not seeking class certification for claims involving "outright termination." Defs.' Surreply to Mot. for Class Certification at 5; Pls.' Reply in Supp. of Mot. for Class Certification at 5.  Lastly, defendants also take issue with leaving "the relevant statutory

period" undefined in the proposed subclass definitions. The Court will address each of these objections in turn.

Implicit in Rule 23 is the "requirement . . . that a class must be defined clearly and that membership be defined by objective criteria." *Mullins v. Direct Digital, LLC*, 795 F.3d 654, 657 (7th Cir. 2015). This requirement is sometimes referred to as "ascertainability." *Id.* Class definitions that are too vague or subjective or that define class members in terms of success on the merits ("fail-safe classes") will not be found sufficiently ascertainable. *Id.* Nonetheless, when a class definition is not ascertainable, the problem "can and often should be solved by refining the class definition rather than by flatly denying class certification on that basis." *Messner*, 669 F.3d at 825; *see also Village of Bedford Park v. Expedia, Inc.*, 309 F.R.D. 442, 454-55 (N.D. Ill. 2015) (noting that the Court would have refined the class definition to address potential ascertainability problems if plaintiffs' proposed class had met the other Rule 23 requirements).

The Court agrees that plaintiffs' proposed definition is overly broad. It is clear that the event plaintiffs are concerned with is the so-called "transfer" between Capgemini FS and Capgemini India, which results in a loss of coverage under Capgemini FS's group health plan. By referring to these "transfers" as "the complete loss of coverage" in their proposed subclass definition, however, plaintiffs inadvertently sweep into the class all Indian nationals who lost coverage upon outright termination from Capgemini FS. Plaintiffs' reluctance to refer to the move from Capgemini FS back to Capgemini India as a "transfer" for purposes of the subclass definition is understandable, in light of their position that such transfers are actually terminations

(and, thus, qualifying events that trigger defendants' COBRA obligations). In their attempt to avoid use of the word "transfer," however, plaintiffs have proposed a class definition that ends up overly broad. The class that plaintiffs seek to represent is most clearly and precisely defined by referring not to a general "complete loss of coverage," but instead to "loss of coverage under Capgemini FS's group health plan as a result of a 'transfer' from Capgemini FS to Capgemini India." The Court therefore refines plaintiffs' proposed subclass definition accordingly.

The Court also agrees with defendants that the vague reference to "the relevant statutory period" in each of the two proposed subclass definitions is problematic from an ascertainability perspective. Plaintiffs' motion for class certification initially defined the relevant time frame as being "from August 8, 2014 to the date of judgment in this action." Pls.' Mot. for Class Certification at 5. Plaintiffs explained that they selected the August 8, 2014 date because they filed the initial complaint on August 8, 2016, and the statute of limitations applicable to such COBRA claims in Illinois is two years. *Id.*; *see also Berger v. AXA Network LLC*, 459 F.3d 804, 808 (7th Cir. 2006) ("When Congress fails to provide a statute of limitations for a federal claim and [28 U.S.C.] § 1658(a) is not applicable, federal courts must borrow the most analogous statute of limitations from state law."); *Fritz v. Health & Welfare Dep't of Constr. & Gen. Laborers' Dist. Council*, No. 99 C 4747, 2001 WL 34085714, at *3 (N.D. Ill. Apr. 6, 2001) (for COBRA violations, the most analogous statute of limitations under Illinois law is the two-year statute of limitations applicable to actions against insurance providers). Defendants have not contested the applicability of a two-year statute of limitations. Accordingly, the Court revises each of the proposed class definitions to include only those claims that arose on

August 8, 2014 or later.

The Court now determines whether each of the following proposed subclasses, as revised, meets the requirements of Rule 23(a) and Rule 23(b)(3):

> Proposed subclass one:  All current and former Indian national employees who elected coverage under defendants' group health plan, together with their spouses and other covered dependents, from August 8, 2014 to the date of judgment in this action, who were not provided a SPD or initial COBRA notice; and

> Proposed subclass two:    All current and former Indian national employees who elected coverage under defendants' group health plan, together with their spouses and other covered dependents and who were not provided notice of COBRA continuation coverage upon loss of coverage under Capgemini FS's group health plan as a result of a "transfer" from Capgemini FS to Capgemini India, from August 8, 2014 to the date of judgment in this action.

Proposed class one corresponds to counts 1 and 2 of plaintiffs' amended complaint, in which plaintiffs allege ERISA and COBRA notice violations at or near the time of enrollment in the plan.  Proposed class two corresponds to counts 3 and 4 of the complaint, pertaining to alleged COBRA violations at the time proposed class members are "transferred" from Capgemini FS back to Capgemini India.

## A.    Rule 23(a) requirements

### 1.    Numerosity

Under Rule 23(a)(1), the party seeking class certification must demonstrate that the proposed class is "so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  A class of more than 40 members is typically considered sufficient for purposes of this rule.  *See, e.g.*, *Ringswald v. County of DuPage*, 196 F.R.D. 509, 512 (N.D. Ill. 2000).  Although estimates of class size "may not be based on pure speculation," the plaintiff need not demonstrate the exact number of class members, so

long as numerosity is apparent based on a good-faith estimate and common sense. *Kurgan v. Chiro One Wellness Centers LLC*, No. 10 C 1899, 2014 WL 642092, at *5 (N.D. Ill. Feb. 19, 2014) (citation omitted).

Plaintiffs assert that they have identified approximately 625 Indian IT workers and at least 619 dependents who enrolled in Capgemini FS's group health plan since August 8, 2014. Defendants assert that new enrollees and their dependents could access the SPD—which included a written explanation of plan participants' rights to continuation coverage under COBRA—via an online BCBS portal. Defendants do not contend that they have provided employees and their dependents any other type of access to these documents upon enrollment in the plan since August 8, 2014. Nor do defendants dispute plaintiffs' assertion that approximately 625 Indian IT workers enrolled in Capgemini FS's group health plan since August 8, 2014. There is no doubt that the numerosity requirement is met for the first proposed subclass.

As for proposed subclass two, defendants do not argue that the number of Indian nationals who have stopped working for Capgemini FS in the United States and been "transferred" back to Capgemini India since August 8, 2014 is 40 or less. In fact, Cauffman testified that approximately 50 to 60 employees "transfer back and forth" from Capgemini FS to Capgemini India each month. Defs.' SUMF, Ex. 4 at 23:5-23:9. Kornowske estimated that 500 to 600 technology programmers working in the United States for Capgemini FS were sent back to work for Capgemini India each year. Kornowske Dep. 65:11-65:13. Common sense therefore dictates the conclusion that at least hundreds of Indian nationals have experienced such a "transfer" since August 8, 2014.

Defendants nonetheless contend that plaintiffs have failed to satisfy the numerosity requirement for proposed subclass two because most "transferee[s] from Capgemini [ ] India" would not be similarly aggrieved by defendants' failure to provide a COBRA notice when they stopped working for Capgemini FS in the United States. Defs.' Resp. to Mot. for Class Certification at 15. Defendants argue that this is so because these "transferees" would typically be in the U.S. on a work visa, which would require them (and their dependents, who would typically be travelling on a derivative visa) to return to India once they stopped working for Capgemini FS. According to defendants, the typical Indian national employee would therefore have "no need for [COBRA] continuation coverage" for himself or his dependents when they were rolled off the group health plan upon "transfer" from Capgemini FS back to Capgemini India. *Id.* Defendants' argument lacks merit. None of the ERISA provisions defendants are alleged to have violated turn on whether a given employee actually had a "need" for continuation coverage. Here, proposed class two is comprised of Indian national employees and dependents who were enrolled in Capgemini FS's group health plan and who were not provided notice of COBRA continuation coverage upon "transfer" from Capgemini FS to Capgemini India. Their actual need for continuation coverage (or lack thereof) has no bearing on their membership in the class. The Court therefore concludes that the numerosity requirement is met for the second proposed class as well.

### 2. Commonality

A class may not be certified unless the party seeking certification can show that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). To

show commonality, plaintiffs must demonstrate that the putative class members "have suffered the same injury." *Jamie S. v. Milwaukee Pub. Sch.*, 668 F.3d 481, 497 (7th Cir. 2012) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)). Class claims must depend on a common contention that is "capable of class[-]wide resolution," such that "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores*, 564 U.S. at 350.

Defendants contend that plaintiffs have not demonstrated commonality for proposed class one because they did not specifically address how this class meets the commonality requirement in their motion for class certification. In the reply brief, however, plaintiffs assert that there is a question of law common to this particular class: "whether Defendants violated their ERISA and COBRA notice obligations . . . at the beginning of coverage." Pls.' Reply in Supp. of Mot. for Class Certification at 6. More specifically, the question is whether providing newly enrolled employees and dependents access to the SPD and initial written COBRA notice through the BCBS portal was sufficient to meet defendants' obligations under ERISA. Plaintiffs contend that the answer to this question is no. If plaintiffs are correct, all class members have suffered the same injury—they were not furnished a copy of the SPD or provided written notice of their COBRA rights upon enrollment in Capgemini's group health plan, as is required by statute. If plaintiffs are wrong, there is no injury. Either way, this question is central to the validity of each putative class member's claim, and it will necessarily be resolved in one stroke.

Defendants further argue that there is insufficient commonality with respect to this first proposed class because the named plaintiffs concede they did not suffer any

monetary damages as a result of defendants' alleged failure to provide them with a copy of the SPD and a written COBRA notice upon enrollment in Capgemini FS's group health plan. It is well-settled that "commonality as to every issue is not required for class certification." *Bell v. PNC Bank, Nat. Ass'n*, 800 F.3d 360, 381 (7th Cir. 2015). Possible differences between class members with respect to damages in no way preclude a finding of commonality where, as here, plaintiffs have identified a significant question of law that is common to the class. The Court therefore finds that proposed class one satisfies the commonality requirement.

Defendants argue that plaintiffs' second proposed subclass fails to satisfy the commonality requirement on the ground that the named plaintiffs' claims are subject to a number of unique defenses that turn on facts specific to their situation. Defendants primarily point to the case-specific circumstances surrounding Bhattacharya's and Koothapillai's final separations from "the Capgemini organization as a whole." Defs.' Resp. to Mot. for Class Certification at 11. The Court's revisions to the second proposed class eliminate any unique defenses related to the named plaintiffs' final separations from "the Capgemini organization" by focusing exclusively on class members' "transfers" between Capgemini FS and Capgemini India. What is left is the common question of whether defendants violated their obligations under COBRA when they failed to provide COBRA election notices to proposed class members when they lost coverage under Capgemini FS's group health plan upon "transfer" from Capgemini FS back to Capgemini India. This question may be resolved for all proposed class members in one stroke. Defendants concede that they do not provide COBRA notices to "transferees"; it is their position that such a "transfer" does not constitute a qualifying

event that would trigger the need to send out a COBRA notice and provide continuation coverage. Because defendants do not dispute that they "have engaged in standardized conduct towards members of the proposed class," and because the contested legality of that standardized conduct forms the basis for plaintiffs' claims in counts 3 and 4, the Court finds that the commonality requirement is met for the revised proposed class two. *Keele v. Wexler*, 149 F.3d 589, 594 (7th Cir. 1998).

### 3. Typicality

The relevant inquiry under Rule 23(a)(3)'s typicality requirement is whether "the named representatives' claims have the same essential characteristics as the claims of the class at large." *Arwa Chiropractic, P.C. v. Med-Care Diabetic & Med. Supplies, Inc.*, 322 F.R.D. 458, 464 (N.D. Ill. 2017) (quoting *Retired Chi. Police Ass'n v. City of Chicago*, 7 F.3d 584, 597 (7th Cir. 1993)). "A plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." *Keele*, 149 F.3d at 595 (internal quotation marks and citation omitted).

Defendants contend that plaintiffs have failed to establish typicality for the first proposed class for the same reason that they contest commonality for that class. They argue that the named plaintiffs' claims are not typical because they have conceded that they suffered no monetary damages as a result of defendants' alleged failure to provide them with a copy of the SPD and a written COBRA notice upon enrollment. This argument fails here too. The Seventh Circuit has explained that typicality should be evaluated with respect to the defendant's actions, not the particularized defenses it may have against certain individual class members. *See CE Design Ltd. v. King*

*Architectural Metals, Inc.*, 637 F.3d 721, 725 (7th Cir. 2011). Defendants do not contend that they acted differently toward the named plaintiffs and other members of the proposed class with respect to furnishing a copy of the SPD and providing a written COBRA notice upon their enrollment in Capgemini FS's group health plan. The typicality requirement is met for proposed class one.

As for the second proposed class, defendants again point to individualized defenses that they may have against the named plaintiffs with respect to their final separations from "the Capgemini organization." As previously explained, not only is this argument largely immaterial in deciding typicality, *see id.*, but it also is rendered moot by the Court's revision to the definition of proposed class two so that it includes only "transfers" from Capgemini FS to Capgemini India. It is undisputed that the named plaintiffs are challenging the same course of conduct that gives rise to the claims of all other members of the second proposed class, as revised, and that the named plaintiffs' claims are based on the same legal theory: the "transfers" are qualifying events triggering defendants' notice obligations under COBRA. Defendants' contention that the named plaintiffs' claims are not typical because most members of the proposed class would have "no need" for COBRA continuation coverage fails largely for the same reason it fails with respect to numerosity—plaintiffs need not demonstrate an actual need for continuation coverage to prevail on their COBRA notice violation claims. Accordingly, the Court finds that the typicality requirement is met for proposed subclass two.

### 4. Adequacy

Rule 23(a)(4) provides that the named plaintiffs in a class action must "fairly and

adequately protect the interests of the class" as a whole. Fed. R. Civ. P. 23(a)(4). To meet this requirement, the party seeking class certification must demonstrate not only "the adequacy of the named plaintiffs as representatives of the proposed class's myriad members, with their differing and separate interests," but also the adequacy of the proposed class counsel. *Gomez*, 649 F.3d at 592.

Defendants do not contest the adequacy of the proposed class counsel. Plaintiffs' attorneys have substantial class action experience, and they have secured multi-million dollar class recoveries in the past. The Court finds that plaintiffs' attorneys are capable of litigating the case fairly and adequately on behalf of the proposed subclasses.

Defendants do, however, dispute Bhattacharya's and Koothapillai's adequacy as class representatives on a number of grounds. With respect to proposed subclass one, defendants once again raise the named plaintiffs' concession that they suffered no actual damages as a result of the alleged initial notice violations; defendants contend this lack of actual damages renders the named plaintiffs inadequate class representatives who lack a sufficient stake in the outcome of the suit. Defendants also argue that the named plaintiffs are inadequate representatives of the first subclass because, as former employees, they are not entitled to prospective injunctive relief. In *Arreola v. Godinez*, 546 F.3d 788, 799 (7th Cir. 2008), the Seventh Circuit held that the district court did not abuse its discretion in declining to certify a named plaintiff as the representative for an injunctive-relief class where the named plaintiff himself was not entitled to prospective relief on the ground that such a plaintiff would be an inadequate representative of the class. The Court agrees that the named plaintiffs' status as former

employees poses a problem regarding their adequacy as class representatives with respect to count 1 of the complaint—which pertains to defendants' alleged failure to furnish to plaintiffs a copy of the SPD within 90 days after their enrollment of the group health plan, in violation of 29 U.S.C. § 1024(b)(1)—because the only type of relief that would appear appropriate for this violation is a prospective injunction requiring defendants to comply with the requirements of section 1024(b)(1).  The named plaintiffs are not adequate representatives of the class for count 1 because they are not entitled to injunctive relief.  *See, e.g.*, *Beal v. Lifetouch, Inc.*, No. CV 10-8454-JST MLGX, 2012 WL 3705171, at *1 (C.D. Cal. Aug. 27, 2012); *Kane v. United Indep. Union Welfare Fund*, No. CIV. A. 97-1505, 1998 WL 78985, at *7 (E.D. Pa. Feb. 24, 1998).  For this reason, the Court will not certify proposed subclass one with respect to count 1 of the amended complaint unless and until a new named plaintiff who is a current employee and who otherwise satisfies the Rule 23(a)(4) adequacy requirement is added to the case.

With respect to count 2 (alleging failure to provide written notice COBRA rights under COBRA at the time of commencement of coverage under the plan in violation of 29 U.S.C. § 1166(a)(1)), however, plaintiffs seek statutory penalties in addition to injunctive relief.  The availability of statutory damages does not depend on the plaintiffs having suffered actual damages or other prejudice as a result of the violation.  *See Gomez*, 649 F.3d at 590-91.  The Court concludes that the named plaintiffs' pursuit of statutory penalties provides them with a sufficient stake in count 2 to permit a finding that they are adequate representatives of class as a whole irrespective of their status as former employees.  Because the named plaintiffs do not have any interests antagonistic

to the proposed class, and in light of their demonstrated commitment to this suit, which is evidenced by their willingness to assist with discovery and sit for depositions, the Court finds that they are adequate representatives of the first proposed subclass with respect to count 2.

The Court can quickly dispose of several of defendants' arguments that the named plaintiffs are inadequate representatives of the second proposed subclass. First, plaintiffs seek damages and statutory penalties in addition to injunctive relief on counts 3 and 4 (pertaining to alleged violations of COBRA notice and coverage requirements triggered by a "qualifying event"). Thus, for the same reasons the Court found the named plaintiffs to be adequate representatives of the first proposed subclass on count 2, the Court concludes that they are adequate representatives of the members of the second proposed subclass on counts 3 and 4 despite their status as former employees who lack entitlement to prospective injunctive relief. As the Court has already explained, any individualized defenses that defendants may have against the named plaintiffs with respect to their final separations from "the Capgemini organization" were eliminated by the Court's revision to the definition of proposed subclass two so that it includes only "transfers" from Capgemini FS to Capgemini India; they have no bearing on the adequacy inquiry. The Court therefore finds that the named plaintiffs are adequate representatives for proposed subclass two.

**B.      Rule 23(b)(3) requirements**

As previously explained, to certify a class under Rule 23(b)(3), the plaintiff must show that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other

available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  In making findings regarding predominance and superiority under Rule 23(b)(3), courts consider the following factors:  (1) "the class members' interests in individually controlling the prosecution or defense of separate actions"; (2) "the extent and nature of any litigation concerning the controversy already begun by or against class members"; (3) "the desirability or undesirability of concentrating the litigation of the claims in the particular forum"; and (4) "the likely difficulties in managing a class action." *Id.*

### 1.    Predominance

Predominance is a more demanding requirement than Rule 23(a)'s commonality requirement.  *See Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 623-24, (1997); *Messner*, 669 F.3d at 814.  The purpose of the predominance inquiry is to "test[ ] whether proposed classes are sufficiently cohesive to warrant adjudication by representation."  *Amchem*, 521 U.S. at 623.  Predominance is not defeated by the existence of individual questions in the litigation; the rule "requires only that those questions not predominate over the common questions affecting the class as a whole." *Messner*, 669 F.3d at 815.  Thus, the requirement is satisfied by the existence of common questions that "represent a significant aspect of [the] case" and "can be resolved for all members of [the] class in a single adjudication"  *Id.* (citation omitted).

Defendants contend that individualized issues counsel against a finding of predominance with respect to the first proposed subclass.  Specifically, defendants argue that the Court would be required to hold individualized hearings on damages to determine "whether the SPD was requested, whether it was sent and what statutory or

actual damages may be."  Defs.' Surreply to Mot. for Class Certification at 4.

Defendants also argue that the lack of a defined statutory period in the class definition

will lead to individualized statute-of-limitations disputes, but this concern has been

alleviated by the Court's revisions to the proposed subclass definitions.  As a

preliminary matter, the question of whether the SPD was requested is irrelevant to

plaintiffs' claims under 29 U.S.C. § 1024(b)(1), which provides that the plan

administrator "shall furnish to each participant, and each beneficiary receiving benefits

under the plan, a copy of the summary plan description" within 90 days after he

becomes a participant or first receives benefits under the plan, without reference to

whether an SPD is requested.  29 U.S.C. § 1024(b)(1).  The requirement that the group

health plan provide written notice to each covered employee and spouse of their

COBRA rights "at the time of commencement of coverage under the plan" likewise does

not turn on whether such information was requested by the employee.  *Id.* § 1166(a)(1).

Moreover, as previously noted, defendants do not assert that they "sent" the SPD or a

written COBRA notice to any of the class members upon their enrollment in the group

health plan; instead, defendants contend that new enrollees and their dependents could

access the SPD—which included a written explanation of plan participants' rights to

continuation coverage under COBRA—via an online BCBS portal.

Defendants also contend that statutory penalties (which are available for the

alleged violation of section 1166(a)(1) but not for the alleged section 1024(b)(1)

violation, as the Court explained in its December 2016 opinion) must be determined on

a case-by-case basis rather than by class wide assessment.  *Kane v. United*

*Independent Union Welfare Fund*, the case defendants cite in support of this

proposition, is inapposite. In *Kane*, the court concluded that statutory penalties would have to be determined on a case-by-case basis because the question of whether any plaintiff received sufficient notice of his COBRA rights upon enrollment in the group health plan or upon the occurrence of a qualifying event was an individual, fact-specific inquiry. *Kane*, 1998 WL 78985, at *5-6. This was because the same course of conduct was not followed with respect to every plaintiff—the plan administrator made oral representations to some of the defendants about their COBRA rights, but not to others, and there was no indication that the oral representations that were made were the same across the board. *Id.* In the present case, by contrast, there is no such individual, fact-specific inquiry to be made with respect to proposed subclass one, and there is thus no reason to believe that statutory penalties cannot be calculated on a class-wide basis.

Lastly, although the issue of actual damages will necessarily have to be determined on an individual basis, that is not enough, in and of itself, to warrant denial of plaintiffs' motion for class certification. *See, e.g.*, *Messner*, 669 F.3d at 815 ("It is well established that the presence of individualized questions regarding damages does not prevent certification under Rule 23(b)(3)."). Moreover, the cases defendants cite for the proposition that anticipated difficulties related to individualized damages should preclude a finding of predominance are distinguishable from the present case. For example, the class at issue in *Comcast Corp. v. Behrend*, 569 U.S. 27, 29 (2013), comprised more than two million members, all of whom sought damages for alleged antitrust violations. In *Espenscheid v. DirectSat USA,* 705 F.3d 770 (7th Cir. 2013), the court affirmed decertification of a class of over 2,000 members based on individualized damages issues. But in that case, damages for wage and hour violations were the only

type of relief sought, and not only did it appear that damages would need to be computed on an individualized basis, but there were also concerns regarding class members' ability to prove how many hours they actually worked in order to establish those damages. *Id.* at 773-77. In the present case, the proposed class is far smaller. Moreover, in addition to actual damages, the class seeks injunctive relief and statutory damages, both of which may be determined on a class-wide basis. Because it appears that all the relevant factual and legal issues other than actual damages are susceptible to resolution on a class-wide basis, the Court concludes that Rule 23(b)(3)'s predominance requirement is met with respect to proposed subclass one.

Nor do individualized damages issues predominate over the questions that are common to the second proposed subclass as a whole. Defendants' liability to the second proposed subclass hinges on the common question of whether they violated their obligations under COBRA when they failed to provide COBRA election notices and continuation coverage to proposed class members upon "transfer" from Capgemini FS back to Capgemini India. Additionally, the requested injunctive relief and statutory penalties, if warranted, may be granted on a class-wide basis. Thus, for the same reasons—and over the same objections by defendants—the Court finds that the predominance requirement is met for proposed subclass two as well.

### 2. Superiority

Finally, the Court finds that a class action is superior to other methods of adjudicating plaintiffs' claims for both proposed subclasses. The Court is not aware of any other litigation against defendants on this subject, nor does there appear to be any reason for concern about class members having an individual interest in controlling the

prosecution or defense of these matters through a separate action. Moreover, in light of the large number of proposed class members and the predominance of common questions that can be addressed in a single litigation, the Court has no doubt that a class action is the most efficient way of addressing plaintiffs' claims. Even though there may be individualized damages issues, they are outweighed by the substantial number of questions of fact and law at issue that are common to all class members in each of the two proposed subclasses. Lastly, although it is possible that many putative class members currently reside in India, the common questions of fact and law in this case override of the distance-related logistical issues that defendants raise in their surreply. The Court therefore finds that plaintiffs have satisfied Rule 23(b)(3)'s superiority requirement.

### Conclusion

For the foregoing reasons, the Court denies plaintiffs' motion for class certification without prejudice in part (with respect to count 1) and grants it in part (with respect to counts 2 through 4) [dkt. no. 49]. The Court certifies, pursuant to Rule 23(b)(3), the following subclasses:

> Subclass one: All current and former Indian national employees who elected coverage under defendants' group health plan, together with their spouses, from August 8, 2014 to the date of judgment in this action, who were not provided written notice of their COBRA rights at the time of commencement of coverage under the plan; and

> Subclass two: All current and former Indian national employees who elected coverage under defendants' group health plan, together with their spouses and other covered dependents and who were not provided notice of COBRA continuation coverage upon loss of coverage under Capgemini FS's group health plan as a result of a "transfer" from Capgemini FS to Capgemini India from August 8, 2014 to the date of judgment in this action.

Bhattacharya and Koothapillai are appointed as class representatives, and their current counsel are appointed as class counsel. The Court defers ruling on the parties' pending cross-motions for summary judgment to allow time for class members to receive notice of the action and to avoid running afoul of the rule against one-way intervention. *See Costello v. BeavEx, Inc.*, 810 F.3d 1045, 1057-58 (7th Cir. 2016). The case is set for an in-person status hearing on March 28, 2018 at 9:30 a.m. The Court expects the parties, before that date, to discuss and attempt to agree upon a proposed class notice or notices and to work on compiling a list of appropriate notice recipients.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: March 14, 2018